NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

TEJAS MADHUKAR PATIL, *Petitioner/Appellee,*

*v.*

DHANASHRI PITAMBAR PATIL, *Respondent/Appellant.*

No. 1 CA-CV 25-0964 FC

FILED 08-04-2026

Appeal from the Superior Court in Maricopa County
No. FC2023-002147
The Honorable Harla Davidson, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

APPEARANCES

Dhanashri Pitambar Patil, Tucson
*Respondent/Appellant*

Tejas Madhukar Patil, Sun City
*Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Anni Hill Foster, and Vice Chief Judge David D. Weinzweig joined.

---

**W I L L I A M S**, Judge:

**¶1** Dhanashri Patil ("Mother") appeals the decree of dissolution ("Decree") dissolving her marriage to Tejas Patil ("Father"). For the following reasons, we affirm in part, and vacate and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2** In 2019, Mother and Father married in India, but soon moved to Arizona. In 2021, the parties purchased a home. At the time of purchase, Mother signed a disclaimer deed designating the home as Father's sole and separate property.

**¶3** In 2022, their child ("Child") was born. In 2023, Father petitioned for dissolution of the marriage. A few months later, the parties reconciled and Father moved the superior court to dismiss his petition. The court obliged. But several weeks later, Father moved to reinstate his petition, which the court granted.

**¶4** During the pendency of the divorce, Mother obtained *ex parte* an order of protection ("OOP") against Father designating both her and Child as protected persons. After a joint hearing on the OOP and Father's motion for temporary orders, the superior court dismissed the OOP, issued temporary orders regarding legal decision-making and parenting time, and ordered Father to pay child support. The court awarded Mother temporary exclusive use of the marital home.

**¶5** Following settlement negotiations, the parties reached an Arizona Rule of Family Law Procedure ("Rule") 69 agreement on some issues but failed to reach agreement on others. The superior court held a trial on the contested issues and entered the Decree.

**¶6** In the Decree, and relevant to this appeal, the superior court: (1) found the disclaimer deed Mother signed was valid and that the marital home was Father's sole and separate property (subject to a community lien);

(2) awarded Mother one half of the community lien on the marital home; (3) ordered Mother to reimburse Father for post-petition payments related to the marital home; (4) credited Father with an offset of $39,432 toward the amount he owed Mother for her portion of the community lien on the marital home; (5) awarded joint legal decision-making authority and equal parenting time; (6) ordered Father to pay child support; (7) awarded Mother her jewelry (including the pieces held by Father's family in India); (8) ordered each party to pay 50% of the community's credit card debts; (9) ordered Mother to reimburse Father for post-petition payments for health insurance; and (10) denied Mother's request for attorneys' fees.

**¶7**        Both parties moved to alter or amend the Decree, which the court denied. Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶8**        Mother challenges several of the superior court's rulings related to the marital home. She also contests the court's orders on health insurance, child support, and credit card debt. Finally, Mother contends Father has not complied with the superior court's order to return her jewelry, and that the court erred in denying her request for attorneys' fees. We address each issue in turn.[1]

### I.    The Marital Home

#### A.    The Disclaimer Deed is Valid.

**¶9**        Mother contends she signed the disclaimer deed involuntarily because of Father's undue influence, fraud, and coercion.

**¶10**        At the temporary orders hearing, Father testified that a notary explained the disclaimer deed to Mother before she signed it. Father admitted he knew that Mother wanted to be on the title, that she believed the marital home would be jointly owned, and that he told her the disclaimer deed was only for the convenience of the lender. He also testified that the home was purchased with community funds, contradicting the

---

[1] For the first time on appeal, Mother asks this court to designate Mother as the primary residential parent for school attendance purposes. As a general rule, we do not address arguments raised for the first time on appeal. *See In re MH 2008-002659*, 224 Ariz. 25, 27, ¶ 9 (App. 2010).

deed's express terms that the marital home was "purchased with [Father's] separate funds."

¶11        Months later, at trial, Mother testified that when the home was purchased, Father directed her to sign several documents that had been previously marked for her signature. She stated, "I started signing, and – and I signed whole – the entire document." She testified that Father had never discussed using a disclaimer deed before that day. And she believed everything she signed was "as per [their] agreement to be 50-50 owner[s] of the house." She stated that after she signed the documents, the notary asked if she knew what she just signed because she had "waiv[ed] away all [her] rights on the house." Mother stated she never intended to waive her ownership interest in the home and that Father "reassured" her the disclaimer deed was "only a formality" to get "a lower interest rate on the loan" but that Mother would still be "50 percent owner of the house."

¶12        But Mother also testified she first "learned that something [wa]s wrong" two years later when talking to someone at an unrelated event who explained to Mother that she signed something "which made [her] transfer [her] ownership of the house to Father."

¶13        The superior court summarized Mother's argument as claiming "the disclaimer deed was not executed in good faith, and that [Father] forced or tricked her into signing" it. But the court did not find Mother credible and concluded the disclaimer deed was valid.

¶14        Property acquired during marriage is presumed to be community property. A.R.S. § 25-211(A). The spouse seeking to rebut that presumption must prove by clear and convincing evidence that the property is separate. *Brebaugh v. Deane*, 211 Ariz. 95, 98, ¶ 6 (App. 2005) (citation modified). A signed disclaimer deed provides such proof, absent fraud or mistake, regardless of which spouse's funds paid for the property. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523–24, ¶¶ 7, 9–11 (App. 2007).

¶15        Here, both parties testified that Father told Mother the use of the disclaimer deed was related to the mortgage. But this alone does not establish that Father obtained Mother's signature by fraud. Mother provided conflicting statements as to when she discovered something was amiss and that she had given up her interest in the home—first stating the notary told her she had waived her rights after she signed the disclaimer deed—but also testifying she first learned there was an issue much later during an interaction with someone at an unrelated event. We defer to the superior court's findings on witness credibility and the weight given to

4

conflicting evidence. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). And because Mother failed to establish fraud by clear and convincing evidence, *see Bell-Kilbourn*, 216 Ariz. at 524, ¶ 11, we affirm the court's conclusion that the disclaimer deed is valid.

### B.      Post-Petition Housing Expenses Were Miscalculated.

**¶16**      Mother challenges the court's order that she reimburse Father $35,800 for his post-petition payments related to the home.

**¶17**      We review the superior court's property division for an abuse of discretion, *In re Marriage of McCulloch and Parker*, 257 Ariz. 195, 199, ¶ 9 (App. 2024), and will affirm if reasonably supported by the evidence, *Andrews v. Andrews*, 252 Ariz. 415, 419, ¶ 18 (App. 2021). "An order for exclusive use of a residence does not preclude a family court from ordering reimbursement for a party's exclusion from a marital or separate home." *Marriage of McCulloch*, 257 Ariz. at 204, ¶ 33.

**¶18**      Father reported marital housing expenses totaling $25,754 between service of the petition and the entry of temporary orders. During that time, Father stayed with a friend and Mother lived in the home. And while the OOP was in force, Father was barred from visiting the home. The temporary orders also gave Mother exclusive use of the home. Father reported additional expenses of $45,845 following entry of the temporary orders through the time Mother began to pay all of the home's expenses under the parties' Rule 69 agreement in March 2025. Thus, the record supports the superior court's finding that "it is equitable to credit [Father's] post-petition payments of the marital residence."

**¶19**      However, the superior court's worksheet attributed Father's post-petition expenses through June 2025. But Father conceded Mother began making full payments under the Rule 69 agreement in March 2025 and agreed that any expenses after that should be excluded. He also testified that Mother had already paid half of what she owed. Consequently, the evidence does not support the court ordering Mother to pay Father $35,800. We vacate that portion of the Decree relating to the post-petition housing expenses and remand for corrected findings and orders going only so far back as when the petition for dissolution was reinstated in October 2023.

## II. The Superior Court Miscalculated the Amount It Could Order Mother to Reimburse Father for Health Insurance Costs.

¶20 Mother contests the Decree's directive that she reimburse Father for his payments for her health insurance. She asserts she paid for her own health insurance beginning in January 2024. For his part, Father contends he was obligated to maintain insurance coverage for Mother and Child under the preliminary injunction and, in any event, that the court's order for Mother to reimburse him $3,632 for health care costs "falls within the court's broad discretion in allocating financial obligations between the parties." *See Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017).

¶21 We review an order for reimbursement of post-petition expenses for an abuse of discretion. *See Hefner v. Hefner*, 248 Ariz. 54, 61, ¶¶ 22–23 (App. 2019). *Berg v. Berg*, 1 CA-CV 21-0320 FC, 2022 WL 1498136, at *4, ¶ 20 (Ariz. App. May 12, 2022) (mem. decision) ("[C]ourts must *consider* the post-petition payment of community expenses but retain discretion to account for such payments in an equitable overall property allocation."). We will affirm the superior court's ruling "if the evidence reasonably supports it." *Andrews*, 252 Ariz. at 419, ¶ 18.

¶22 Once the superior court reinstated Father's original petition for dissolution in October 2023, it follows that the preliminary injunction was also reinstated. *See* A.R.S. § 25-315. Father was obligated to continue Mother's health insurance coverage. A.R.S. § 25-315(A)(1)(c). Father testified that he did. And though Mother testified she obtained separate health insurance coverage, we cannot say the court abused its discretion in finding it "equitable" to credit Father for his post-petition payments for Mother's insurance coverage.

¶23 We note, however, that the superior court mistakenly credited Father "from the date of service [of the petition] to December 2024." Father is only entitled to reimbursement from October 2023 (the date of reinstatement of the petition for dissolution) through December 2024. We, therefore, vacate that portion of the Decree and remand for the court to enter orders consistent with this timeline.

## III. The Superior Court Should Have Awarded Past Child Support.

¶24 Mother challenges the superior court's denial of her request for past child support predating the award of temporary child support. She also asks this court to recalculate the court's final child support award. In doing so, Mother maintains she exercised sole custody following the parties' separation in early 2023. And while the court's temporary orders

6

directed Father to pay child support beginning February 1, 2024, Mother requested past child support beginning on April 12, 2023, the date of service of the petition for dissolution. The court declined to do so and then denied Mother's Rule 83 motion to alter or amend the Decree.

**¶25**        "Child support awards are within the discretion of the trial court." *Simpson v. Simpson*, 224 Ariz. 224, 225, ¶ 4 (App. 2010). We will affirm a child support order if "competent evidence" supports the court's exercise of its discretion. *Jenkins v. Jenkins*, 215 Ariz. 35, 37, ¶ 8 (App. 2007). We construe the evidence in the light most favorable to affirming the ruling. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶¶ 16, 19 (App. 2009).

**¶26**        The superior court declined to award Mother past child support. But the uncontroverted evidence shows that Mother alone exercised parenting time with Child from October 2023 (the month Father's petition for dissolution was reinstated) until February 2024 when the OOP that prevented Father from seeing Child was dismissed. The court should have awarded Mother past child support for those months. We remand for the court to do so.

**¶27**        Mother also asks us to consider additional evidence (when considering the superior court's final award of child support) that was not part of the trial record. She provided additional evidence of childcare costs with her Rule 83 motion but those were not offered into evidence at trial. Mother also asks us to consider Father's tax returns in making our own child support calculation. But the court expressly noted in the Decree "[n]either party provided tax filings to the Court." Though Father's tax returns from 2022–2024 and W-2s from 2023–2024 were disclosed and marked as exhibits, neither party offered them for admission.

**¶28**        Our review is limited to the record before the superior court at the time of trial. *Bowser v. Nguyen*, 249 Ariz. 454, 457, ¶ 14 (App. 2020). Available evidence that a party failed to introduce at trial cannot serve as a proper basis for a Rule 83 motion. Ariz. R. Fam. Law P. 83(a)(1)(A) (noting that a Rule 83 motion generally considers only "admitted evidence"), (a)(1)(E) (limiting the "newly discovered evidence" ground for altering or amending a ruling to evidence in existence at the time of trial that could not have been discovered with reasonable diligence).

## IV.    The Superior Court Appropriately Assigned the Credit Card Debt.

**¶29**        Mother next challenges the superior court's order that the community's credit card debt be paid equally by each party. She argues that

the expenses on the credit card were incurred solely by Father for his "meals and travel" after he left Mother and Child in India following a trip there.

¶30        "Because debt incurred during marriage is presumed to be community in nature, the spouse contesting this characterization must establish by clear and convincing evidence that the debt is actually a separate obligation." *In re Marriage of Flower*, 223 Ariz. 531, 537, ¶ 24 (App. 2010).

¶31        The superior court admitted into evidence the pertinent credit card statement during Father's testimony. All the relevant charges occurred before the court reinstated Father's petition for dissolution in October 2023, and in fact, predated his original filing date of April 10, 2023. Mother testified that "all those [credit card] transactions were used only for Father's expenses." But this allegation alone does not establish, by clear and convincing evidence, that the expenses were Father's separate obligation. They are presumed to have benefited the community. Mother's argument fails.

## V.    The Superior Court's Order Regarding Dependent Child Tax Benefits Was Not Error.

¶32        Mother challenges the superior court's order allocating which party may claim the annual dependent child tax benefit. The Decree provides that Father may claim the benefit in 2025, 2026, and 2027, and that Mother may claim the benefit in 2028 and 2029. The Decree notes that Father may not claim the benefit unless he has paid all the required child support for the year.

¶33        Mother asserts the parties agreed during settlement discussions for Mother to claim Child on her tax return during odd years, with Father claiming Child on even years. But the parties' Rule 69 agreement, which was read into the record at the beginning of trial, did not address tax benefits. After reviewing the agreement, the superior court asked if anything was left out of the agreement, and neither party sought to add tax benefits.

¶34        Father testified Mother claimed Child on her tax return for three years: 2022, 2023, and 2024. Mother explained that Father unexpectedly directed her to file separately in 2022. Despite difficulty, she did so, claiming Child as a dependent. She claimed Child in 2023 because she had sole physical custody for most of the year. She claimed the benefit in 2024 because the temporary orders stated that Father could only claim

the benefit if he was current on his child support obligations. Because he did not meet that obligation, Mother claimed the benefit again in 2024.

¶35        Arizona's Child Support Guidelines direct the superior court to allocate the federal and state tax benefits between parents "in proportion to the Combined Child Support Income of both parents." A.R.S. § 25-320 app. ("Guidelines") § XI.B.1.a. The Guidelines provide that the court may condition claiming the tax benefit upon a parent's payment of their child support obligation by December 31. Guidelines § XI.C.1. We review child support orders for an abuse of discretion. *Hamblen v. Hamblen*, 203 Ariz. 342, 344, ¶ 6 (App. 2002).

¶36        The Decree complies with the Guidelines. The superior court calculated that Father is responsible for 58.82% of Child's support and Mother is responsible for 41.18%. The court awarded three years of tax benefits to Father and two years of tax benefits to Mother, in accordance with the above percentages and as directed by the Guidelines. Further, the court conditioned Father claiming the benefit upon his payment of child support. Mother has shown no error.

**VI.    Father's Failure to Return Mother's Jewelry is an Issue for the Superior Court.**

¶37        Mother claims Father has not complied with the Decree directing that he return her jewelry (including that held by his family in India). Mother requests a monetary award of $61,690 if Father does not return her jewelry. She also asks that we review evidence disclosed, but never admitted at trial, that can demonstrate Father's unwillingness to return her jewelry. *See Gersten v. Gersten*, 223 Ariz. 99, 103, ¶ 10 (App. 2009) (explaining that pretrial submissions have no evidentiary value unless admitted in evidence (citing *In re Marriage of Kells*, 182 Ariz. 480, 493 (App. 1995))). Because Mother's request was raised for the first time on appeal, we need not address it. *See Alulddin v. Alfartousi*, 255 Ariz. 436, 442, ¶ 20 (App. 2023).

¶38        We note, however, if a party fails to comply with a court order to convey property awarded in a dissolution decree, the superior court may enforce "its decree[] through enforcement actions." *In re Marriage of Rojas*, 255 Ariz. 277, 282, ¶ 9 (App. 2023); Ariz. R. Fam. Law P. 92(a)(1) ("The court may use civil contempt sanctions under this rule only for compelling compliance with a court order or for compensating a party for losses because of a contemnor's failure to comply with a court order.").

## VII. The Superior Court Did Not Err in Denying Mother Attorneys' Fees.

¶39 Lastly, Mother requests we revisit the court's refusal to award her attorneys' fees and costs under A.R.S. § 25-324. Though the superior court found Father has greater financial resources than Mother, the court also appropriately considered the reasonableness of each party's positions before denying Mother's request. On this record, Mother has shown no error.

## CONCLUSION

¶40 We vacate the superior court's order and calculation of post-petition expenses for the marital home, as well as the court's order denying Mother's request for past child support. We remand on those two issues for the court to address them as directed in this decision. In all other respects, we affirm the Decree.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:                JR